IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **GUILLERMO RIO MENDOZA,** § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> **COMMISSIONER, SOCIAL** § <br> **SECURITY ADMINISTRATION,** § <br> *Defendant.* § | **CIVIL ACTION NO. 5:24-CV-055-BJ** |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Guillermo Rio Mendoza ("Mendoza") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment.  For the reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED**.

**I.     STATEMENT OF THE CASE**

Mendoza filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his clams for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA").  Mendoza protectively applied for DIB on August 21, 2021, alleging that he became disabled on June 13, 2021.  (Transcript ("Tr.") 22, 194-96.)  On February 28, 2023, Mendoza protectively filed for SSI, alleging the same onset date of disability.  (Tr. 22, 210-17.)  After his applications for benefits were denied both initially and on reconsideration, Mendoza requested a hearing before an ALJ.  (Tr. 81-91, 102-03.)  The ALJ held a hearing by telephone on June 26, 2023, and issued an unfavorable decision on September 1,

2023. (Tr. 16-32, 141-45.) Mendoza then filed a request for review of the ALJ's decision to the Appeals Council. (Tr. 12-14.) On December 18, 2023, the Appeals Council denied Mendoza's request for review, leaving the ALJ's decision as the final decision of the Commissioner in this case. (Tr. 4-11.) Mendoza subsequently filed this civil action seeking review of the ALJ's decision. (ECF No. 1.)

## II.     STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* of the SAA, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. SSI benefits are governed by Title XVI, 42 U.S.C. § 416 *et seq.*, in addition to numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SAA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial or gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, the Commissioner uses a sequential, five-step approach and considers the following:

> (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations;[1] (4) whether the claimant can still do [his or] her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work.

---

[1] A claimant's disability will be found if the impairment or combination of impairments "meets or equal" an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d).

*Sherri L. v. Comm'r of Soc. Sec.*, No. 3:23-CV-1919-BK, 2024 WL 434048, at *4 (N.D. Tex. Sept. 27, 2024) (citing *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021)); *see* 20 C.F.R. § 404.1520(a)(4). In the fifth and final step, when determining whether the impairment prevents the claimant from doing any relevant work, the ALJ considers the claimant's residual functional capacity ("RFC"), age, education, and past work experience. 20 C.F.R. §§ 404.1520(g), 426.920(f); *see also Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1998). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant can perform despite his existing impairments. *Id.* If the Commissioner meets this burden, the burden of proof shifts back to the claimant to rebut the Commissioner's findings. *Id.*

In reviewing the Commissioner's denial of disability benefits, the Court's review is "exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, [when considering the record as a whole,] and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In this context, substantial evidence is "more than a mere scintilla of evidence, but less than a preponderance." *Ripley v. Chater*, 67 F.3d 553, 555 (5th Cir. 1995) (internal citations omitted). A finding of no substantial evidence is appropriate only if no credible evidentiary sources or medical findings support the decision. *Boyd*, 239 F.3d at 704. While the Court shall scrutinize the record to determine whether substantial evidence is present, it may neither reweigh the evidence in the record nor substitute its judgment

for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Any findings of fact by the [Commissioner] which are supported by substantial evidence are conclusive." *Ripley*, 67 F.3d at 555; *see Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *7 (W.D. Tex. Sept. 3, 2021) (internal citations omitted) (noting that "[i]f the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed"). In reviewing "the propriety of a decision of 'not disabled,' this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner." *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *3 (N.D. Tex. Jan. 11, 2016). To make a determination of whether substantial evidence of disability exists, the Court weighs: "1) objective medical facts; 2) diagnoses and opinions of treating and examining physicians; 3) claimant's subjective evidence of pain and disability; and 4) claimant's age, education, and work history." *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

### III.   ISSUE

In his brief, Mendoza raises one following issue: Whether the decision of the ALJ is supported by substantial evidence? (Plaintiff's Brief ("Pl.'s Br.") at 1.)

### IV.   ALJ DECISION

In her September 1, 2023 decision, the ALJ found that Mendoza met the insured status requirements of the SSA through December 31, 2026, and had not engaged in substantial gainful activity since June 13, 2021, the alleged onset of Mendoza's disability. (Tr. 24.) At Step Two, the ALJ found that the claimant had the following severe impairment: "human immunodeficiency virus (HIV) infection." (Tr. 24 (emphasis omitted).) The ALJ considered and determined that the following impairments were not severe: acute gastroenteritis, latent syphilis, hearing loss,

pulmonary modules, and Bell's palsy. (Tr. 25.) Next, at Step Three, the ALJ determined that the claimant did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 26.) As to the claimant's RFC, the ALJ stated that "[a]fter careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform a full range of medium work."[2] (Tr. 26 (emphasis omitted).) At Step Four, the ALJ found that Mendoza was capable of performing his past relevant work. (Tr. 31 (emphasis omitted).) Accordingly, the ALJ concluded that Mendoza was not disabled as defined under the SSA from the alleged onset date of June 13, 2021, through the date of the decision. (Tr. 31 (emphasis omitted).)

## V.   DISCUSSION

The central issue presented is whether the ALJ's RFC determination was supported by substantial evidence. Mendoza alleges that "[w]ithout a medical opinion to support the RFC the ALJ impermissibly relied on her own lay interpretation of Mendoza's medical evidence when assessing the RFC," thus committing a "*Ripley* error."[3] (Pl.'s Br. at 12.) He further alleges that there is no substantial evidence in the record to support the RFC determination. (Pl.'s Br. at 13.) In contrast, the Commissioner argues that "what [Mendoza] alleges is the ALJ's impermissible interpretation of raw medical evidence is actually the ALJ properly interpreting the medical evidence to determine [Mendoza's] capacity for work." (Defendant's Brief ("Def.'s Br.") at 5.) The Commissioner maintains that, considering both medical and non-medical evidence,

---

[2] Medium work is defined as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[3] *Ripley* errors refer to situations where "the ALJ formulates an RFC with no supporting medical opinion evidence or rejects as 'unpersuasive' any medical opinion that could lend support to the RFC." *Cooper v. Comm'r. of Soc. Sec.*, 2022 WL 4538315, at * (N.D. Tex. July 15, 2022) (citing *Ripley*, 67 F.3d at 557-58). Such situations result in *Ripley* errors because "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x. 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557).

substantial evidence supports the ALJ's decision that Mendoza retained the RFC to perform a full range of medium work.  (Def.'s Br. at 4.)  Thus, the Commissioner argues that because substantial evidence supports the RFC determination, the ALJ was not required to seek a medical source statement.  (*Id.*)

The RFC is an ALJ's assessment, based on all relevant medical and other evidence in the record, of the *most* that a claimant can still do despite their limitations.  *See* 20 C.F.R. § 404.1545 (emphasis added).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *See* SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  *See* SSR 96-8P, 1996 WL 374184 at *2. "The RFC determination is a combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Mary L. v. Comm'r of Soc. Sec.*, No. 3:23-CV-1430-BK, 2024 WL 3939571, at *3 (N.D. Tex. Aug. 26, 2024).  The RFC determination is the sole responsibility of the ALJ.  *See Taylor*, 706 F.3d at 602-03 (citing *Ripley*, 67 F.3d at 557); *Monk v. O'Malley*, No. 4:23-cv-21-ALM-KPJ, 2024 WL 796496, at *3 (E.D. Tex. Feb. 8, 2024), *rec. adopted*, 2024 WL 778378 (E.D. Tex. Feb. 26, 2024) ("[d]etermining a claimant's RFC is the ALJ's responsibility, and she has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence") (internal citations omitted); 20 C.F.R. § 404.1546.  An RFC determination must be based on substantial evidence and any conflicts in the evidence are resolved by the ALJ, not the courts.  *See S.K. v. O'Malley*, No. 3:24-CV-092-BR, 2024 WL 2162777, at *2 (N.D. Tex. May 14, 2024).

In making an RFC determination, the ALJ shall consider evidence of a claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *See* 20 C.F.R. § 404.1529(a). The ALJ also examines a claimant's medical history which often documents "such matters as test results, physicians' interpretations of those tests, diagnoses, treatments and procedures, and information regarding [a claimant's] recovery from those procedures." *Folkens v. Comm'r of Soc. Sec.*, No. 1:23-CV-00346-MJT, 2024 WL 4904660, at *2 (E.D. Tex. Nov. 26, 2024) (citing *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *4 (5th Cir. 2023) (per curiam)).

"Under the current regulations, ALJs do not 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings.'" *Mary L.*, 2024 WL 3939571, at *4 (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). In reviewing all evidence in the record, "an ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion." *Ward v. Comm'r of Soc. Sec.*, No. 5:24-cv-00153-BP, 2025 WL 531783, at *5 (N.D. Tex. Feb. 18, 2025) (internal citations omitted). Additionally, "[t]here is no requirement that an ALJ's finding must mirror or match a medical opinion." *Carson v. Comm'r of Soc. Sec.*, No. 6:21cv12, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022), *rec. adopted*, 2022 WL 2489340 (E.D. Tex. July 6, 2022); *see Myers*, 2021 WL 4025993, at *8 (holding an ALJ is not required to have a medical opinion that matches his RFC determination); *see also West v. Kijakazi*, No. H-21-2395, 2022 WL 4137297, at *7 (S.D. Tex. Aug. 26, 2022), *rec. adopted*, 2022 WL 4138574 (S.D. Tex. Sept. 12, 2022) (the "ALJ may properly formulate an RFC that is not an adoption of any medical opinion while still basing his decision on substantial evidence"). Nor is there a requirement that an ALJ is required to incorporate limitations in the RFC that she did not find the record supported. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

While an ALJ should generally "request a medical source statement describing the type of work that the applicant is still capable of performing[, t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Gonzales*, 2016 WL 107843, at *9 (quoting *Ripley*, 67 F.3d at 577); *see also Vasquez v. O'Malley*, No. 24-50233, 2024 WL 4381269, at *2 (5th Cir. 2024) (finding "[a]n administrative record is not *per se* incomplete without a medical opinion about a claimant's limitations, so long as it otherwise contains substantial evidence to make the RFC assessment"). Medical opinions are just one category of evidence that ALJs consider when making an RFC determination. *See* 20 C.F.R. § 1513. Additionally, "[i]n *Ripley*, the Fifth Circuit explained that an ALJ can determine a claimant's RFC even without a medical opinion addressing specific functional limitations, provided that the remainder of the record evidence substantially supports the ALJ's determination." *Hess v. Kijakazi*, No. 22-5305, 2023 WL 8696374, at *6 (E.D. La. Oct. 20, 2023), *rec. adopted*, 2024 WL 1231327 (E.D. La. Mar. 22, 2024); *see Johnny M. v. Saul*, No. 5:20-CV-173-BR, 2022 WL 9597736, at *4 (N.D. Tex. Jan. 21, 2022) (affirming the ALJ's decision based on substantial evidence because the ALJ had considered the medical and other evidence in the record, even absent a medical source statement describing the types of work Plaintiff could do). Thus, when there is no medical statement in the record the inquiry shifts and "focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557; *see S.K.*, 2024 WL 2162777, at *3 (finding that "[a]n ALJ may properly make a disability determination that does not expressly adopt any medical opinion when it is based on substantial evidence"). As stated above, a finding of no substantial evidence is *only* appropriate if no credible evidentiary sources or medical findings support the decision. *Boyd*, 239 F.3d at 704.

Under the required deferential review, the Court finds that the ALJ's determination of Mendoza's RFC is supported by substantial evidence. To review, the ALJ found that Mendoza's HIV infection was a severe impairment and noted that, while the medical records documented treatment for other medical impairments, including acute gastroenteritis, latent syphilis, hearing loss, pulmonary nodules, Bell's palsy, and other short-term medical issues, these impairments were non-severe and would have such minimal effect that it would not be expected to interfere with Mendoza's ability to work. (Tr. 25.) Further, the ALJ found no objective evidence to support a medically determinable impairment related to unspecified osteoarthritis, dorsalgia (back pain), and neuropathy. (Tr. 25.) Based on all the evidence in the record, the ALJ ultimately concluded that Mendoza can perform the full range of medium work. (Tr. 26.)

In reaching this decision, the ALJ carefully considered medical records, medical opinions, Mendoza's hearing testimony, and other evidence in the record. (Tr. 26-27.) Addressing Mendoza's hearing testimony, the ALJ found Mendoza's medically determinable impairments could be expected to cause some of his alleged symptoms; nonetheless, the ALJ determined that his statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence or other evidence in the record. (Tr. 27.) In support of this finding, the ALJ noted inconsistencies between Mendoza's hearing testimony and the record for issues Mendoza alleged were totally disabling and related to back and leg pain, low weight, nausea, vomiting, sleeping, fatigue, and weakness. (Tr. 28-29.)

In connection with his alleged back and leg pain, Mendoza stated, during this hearing testimony, that he:

> "cannot pick up more than 5 pounds, cannot stand up real good . . . and can only walk a little bit before he gets out of breath fast, his back, [and] his leg hurts. [Further, h]e estimated he can stand or walk for only about 30-45 minutes before

> getting tired . . . [and h]e explained sitting down 2-3 times a day to rest and laying down 3-4 hours a day on average to rest."

(Tr. 27 (citing Tr. 48-50).) However, the ALJ cited to multiple reports during this "totally disabling period" in which Mendoza made no complaints of leg or back pain.[4] Further, the ALJ highlighted treatment notes from July and November 2022, as well as a physical examination in May 2022, which document no edema or abnormality that would limit Mendoza's ability to lift, stand, sit, or walk. (Tr. 29 (citing Tr. 431, 498-99).) Such findings were similarly identified during a consultative examination, where no abnormality was found to account for his symptoms.[5] The consultative examiner noted that Mendoza had full strength, range of motion, negative leg raise testing, a normal gait, and had demonstrated no difficulty getting up, squatting or doing other examination movements. (Tr. 29 (citing Tr. 390-94).) Highlighting the inconsistencies between Mendoza's testimony and the record, the ALJ identified only an isolated incident where Mendoza complained of back pain, yet the ALJ also considered this complaint in the context of a visit where Mendoza requested the doctor sign disability paperwork. (Tr. 27 (citing Tr. 405).)

Similar analyses followed for Mendoza's other symptoms that he alleged were totally disabling.[6] For instance, while Mendoza alleged fatigue as he gets tired easily, the ALJ noted that, while there were complaints of tiredness, Mendoza denied sleep problems and the ALJ found no

---

[4] Mendoza failed to assert any complaints of leg or back pain during his HIV follow-up appointments in October 2021 (Tr. 327), January 2022 (Tr. 468-70), and May 2022 (Tr. 481-82).

[5] During a consultative examination in May 2022, Mendoza reported some back and leg pain but also reported being able to lift up to fifty pounds, walk two blocks without any assistance, sit for about 45 minutes, and stand for about an hour at a time. (Tr. 29 (citing Tr. 389-90).)

[6] While the Court does not discuss the ALJ's analysis of each symptom Mendoza alleges during his hearing testimony was totally disabling, the Court notes that each symptom was thoroughly discussed by the ALJ, following similar analyses and end results as the symptoms discussed herein.

evidence[7] that Mendoza followed-up on treatment for his symptoms. Additionally, Mendoza alleged totally disabling symptoms related to nausea and vomiting; however, the ALJ cited to reports where Mendoza stated such issues had resolved[8] or where no complaints were made at all.[9] Further, the ALJ highlighted and considered Mendoza's consistent history of denying medication side effects. (*See* Tr. 372, 469, 482, 500.) Despite the fact the ALJ found no medical records to support Mendoza's claim that doctors want him to weigh 189 pounds, the ALJ still considered his alleged "low weight" symptom in making his RFC assessment. However, in properly weighing the evidence before her, the ALJ contrasted these statements with treatment notes which detail Mendoza's weight gain, even during periods where he alleged vomiting every 2-3 weeks, as well as reports that document him gaining and maintaining weight within a healthy BMI. (Tr. 405, 407.) As it relates to Mendoza's symptoms, the ALJ thoughtfully considered Mendoza's hearing testimony, assessed his credibility, and determined his symptoms were not as severe as he claimed. Just as an ALJ is entitled not to incorporate limitations not supported by the record, "an ALJ is entitled to reject a plaintiff's testimony that is inconsistent with the medical records." *David W.G. v. O'Malley*, No. 4:23-cv-3462, 2024 WL 5284884, at *7 (S.D. Tex. Dec. 3, 2024) (citing *Sherri L.*, 2024 WL 434048, at *7).

Subsequently, the ALJ considered the medical consultants' findings and medical opinion of Kimberly France ("Dr. France"). (Tr. 29-30.) The ALJ determined that Dr. France's September

---

[7] While Mendoza had been referred for a sleep study or follow-up with a primary care provider regarding sleeping concerns, the ALJ found no evidence that Mendoza sought any treatment for his symptoms. (Tr. 28 (citing Tr. 483).)

[8] At his October 2021 HIV follow-up appointment, Mendoza alleged that his candida esophagitis, which caused some appetite, nausea, and vomiting problems, had resolved. (Tr. 373.)

[9] No complaints of nausea and/or vomiting were made in October 2021 (Tr. 372) or January 2022 (Tr. 468-69). Additionally, in January 2022, Mendoza denied weight loss. (Tr. 468.)

2021 opinion was unpersuasive because it was not supported by or consistent with the record. (Tr. 29.) In making this determination, the ALJ noting the opinion was disproportionate to the medical evidence, stated:

> [Dr. France] opined that the claimant can never do any reaching handling, fingering, feeling, pushing, or pulling, can never perform any postural task, can never use foot controls. [Yet, as explained by the ALJ,] the claimant's musculoskeletal, extremity, and neurological examinations are consistently considered normal—there is no abnormality in his record to account for these limitations."

(Tr. 30.) The ALJ further contrasted Dr. France's findings with the long-term medical record. While Dr. France opined that the limitations set forth in the opinion were supported by the fact Mendoza was "extremely weak,"[10] had severe pain and swelling, and medication side effects, the ALJ distinguished these findings from the medical record, which documented 5/5 strength and no weakness, no consistent complaints of pain or any abnormality on a physical examination to account for symptoms of pain, and Mendoza's consistent denials of medication side effects. (Tr. 29.)

Further, the ALJ noted that, while Dr. France "opined that [Mendoza] can sit/stand/walk in combination only 3 out of 8 hours (meaning he would be laying down 5 out of 8 hours)," Mendoza's hearing testimony set forth that he wouldn't be laying down that long and there was no evidence in his treatment notes mentioning Mendoza's need to lay down, nap, or otherwise inability to sustain medium work. (Tr. 30.) Despite the fact that the ALJ found Dr. France's opinion to be unpersuasive, the ALJ noted that the basis of the opinion likely stemmed from Dr. France's belief that Mendoza's initial symptoms were going to persist. (Tr. 30.) However, citing to records in the month following Dr. France's opinion and thereafter, the ALJ detailed how this

---

[10] Dr. France does not describe how Mendoza is allegedly "extremely weak" beyond citing that it is due to his disability. (Tr. 342.) However, as the ALJ noted, the limitations set forth by Dr. France are not supported by the medical record and Dr. France fails to cite to any medical or clinical records to support the limitations beyond basing the limitations on general, undefined "weakness." (Tr. 342-44.)

belief is unsupported by the record as a whole which documents that Mendoza's initial symptoms did not persist.

The ALJ also considered the findings of the state medical consultants ("SAMCs") and found them partially persuasive. (Tr. 30.) While the ALJ disagreed with the SAMCs' determination that Mendoza had no severe impairment,[11] the ALJ found persuasive the portions of the opinions that support that Mendoza's HIV is under good control on medication without side effects. Contrary to Mendoza's argument that the ALJ implicitly rejected the SAMCs' findings by determining Mendoza's impairment was severe as opposed to non-severe, it is clear that the ALJ did not wholly reject the SAMCs' assessments. Instead, relying on these portions of the SAMCs' opinions and other evidence in the record that Mendoza's impairment is under control,[12] the ALJ concluded that Mendoza could return to or continue with medium exertional work as he had been doing prior to the alleged onset date. To support this stance, the ALJ highlighted records documenting that Mendoza likely had HIV for a long-term period prior to the alleged onset date and, yet, was still able to sustain medium exertional work.[13] (Tr. 29 (citing Tr. 355-56).) Although the ALJ acknowledged a period of worsening in Mendoza's condition,[14] her decision to include in

---

[11] The ALJ determined that Mendoza's HIV met the minimal burden of a severe impairment as it would "require routine follow-up, medication, and has had periodic complaints of poorly defined fatigue and various body pains." (Tr. 31.)

[12] The ALJ alleges that Mendoza's impairment is under control with the use of medication. (Tr. 28-29.) In support of such findings, the ALJ documents how Mendoza's "viral load [has] reduced to an undetectable viral load (less than 200 copies/ml)" (Tr. 28), which stands in stark contrast to Mendoza's initial viral load of 1,550,000. (Tr. 469.)

[13] While Mendoza alleges the alleged onset date was in June 2021, he was diagnosed with AIDS in April 2021 but was still able to sustain his previous employment. (Tr. 372.)

[14] Mendoza was diagnosed with HIV in April 2021. (Tr. 356.) Between the time he was diagnosed and an appointment in July 2021, Mendoza dropped weight from 190 pounds to 117 pounds and described several symptoms, including dizziness, sleepiness, and complaints of nausea/vomiting. (Tr. 356.) Additionally, Mendoza's BMI at the July 2021 appointment was 18.52. (Tr. 357.) While the ALJ recognized these symptoms as being part of Mendoza's "worsening period," she contrasted these initial symptoms with records documenting that Mendoza's impairment improved with treatment. (Tr. 29.) For instance, the ALJ cited to records in January 2022, which document an

the RFC assessment that Mendoza's impairment is under control stemmed from the findings of the SAMCs and other evidence in the record. Given that an RFC determination is not required to match or mirror a medical opinion, the ALJ was permitted to develop an RFC that differed from the medical opinions provided while still being supported by substantial evidence.

Additionally, as stated above, the ALJ considered the findings of the consultative examiner and, while the ALJ found the findings to be unpersuasive to the extent the comments were intended as a medical opinion, the ALJ considered the findings and identified inconsistencies between the comments and the results of the examination. (Tr. 31.) Further, the ALJ highlighted Mendoza's statement during the consultative examination that he could lift up to fifty pounds. (Tr. 31 (citing Tr. 389-90).) The findings of the consultative examination constitute other evidence that the ALJ could and, it appears, did consider in making her RFC determination.

Based on the foregoing, the Court finds that the ALJ properly considered the evidence as a whole, utilizing not only part of the opinions in the record, but also the other medical evidence in the record. What Mendoza argues is the ALJ impermissibly interpreting raw medical data, is in fact the ALJ fulfilling her role of weighing the evidence and only incorporating limitations in her RFC assessment that the record supported. *Ward*, 2025 WL 531783, at *5. Further, Mendoza fails to cite to evidence in the record that contradicts the ALJ's RFC determination or highlights that it was not based on substantial evidence. *See Myers*, 2021 WL 4025993, at *8 (finding substantial evidence supported the ALJ's determination because, although the ALJ found the medical opinions in the record unpersuasive and imposed a more restrictive RFC, the Plaintiff was unable to cite to medical opinions or other evidence in the record which contradicted the ALJ's RFC). Additionally,

---

improvement in symptoms and a weight gain of roughly over 30 pounds with Mendoza then weighing 150 pounds and having a BMI of 23.62. (Tr. 469.)

as explained above, the ALJ partially relied on the assessments of the SAMCs when making the RFC determination.

This is simply not a case where there are no credible evidentiary sources or medical findings to support the decision. *See Boyd*, 239 F.3d at 704 (noting when a finding of no substantial evidence is appropriate). "If the [ALJ's] findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the [ALJ], even if the court determines evidence preponderates toward a different finding." *S.K.*, 2024 WL 2162777, at *2. After all, it is the ALJ, not the court, who must resolve conflicts in the evidence. *Hess*, 2023 WL 8696374, at *5. In this case, there is substantial evidence supporting the ALJ's RFC determination and, thus, no *Ripley* error has occurred. Because the ALJ's RFC determination is supported by substantial evidence, remand is not required.

## VI.  CONCLUSION

Based on the foregoing, the ALJ's decision is **AFFIRMED** in all respects.

SIGNED March 25, 2025.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE